UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BENTURA MENDOZA,<br><br>Plaintiff,<br><br>v.<br><br>MOVEMENT MORTGAGE, LLC,<br><br>Defendant. | No. 2:24-cv-03371-DAD-CSK<br><br>ORDER DENYING DEFENDANT'S<br>MOTION TO COMPEL ARBITRATION<br><br>(Doc. No. 3) |

This matter is before the court on defendant's motion to compel arbitration. (Doc. No. 3.) On January 6, 2025, the pending motion was taken under submission on the papers pursuant to Local Rule 230(g). (Doc. No. 14.) For the reasons explained below, the court will deny defendant's motion.

**BACKGROUND**

Plaintiff, Bentura Mendoza, brings this individual wage and hour action against defendant Movement Mortgage. (Doc. No. 1-3 at ¶ 1.) Based upon the allegations of his complaint, plaintiff asserts seven California state law claims against defendant. (*Id.* at ¶¶ 23–70.) Defendant moves to compel arbitration of plaintiff's claims based upon its California arbitration agreement, which plaintiff was required to sign as part of defendant's pre-employment onboarding process. (Doc. No. 3-1 at 2–3.) However, defendant accidentally sent plaintiff both its California arbitration agreement and its North Carolina arbitration agreement during the onboarding process.

1

1  (Doc. No. 15 at 4.)  Plaintiff signed the California arbitration agreement first and minutes later
2  signed the North Carolina agreement.  (Doc. No. 15-1 at 2, 6.)
3       Defendant filed its pending motion to compel arbitration on December 9, 2024 and a
4  supplemental declaration in support of its motion on January 7, 2025.  (Doc. Nos. 3, 15.)  Plaintiff
5  filed his opposition on January 14, 2025, and defendant filed its reply thereto on January 21,
6  2025.  (Doc. Nos. 16, 17.)

## LEGAL STANDARD

     A written provision in any contract evidencing a transaction involving commerce to settle a dispute by arbitration is subject to the Federal Arbitration Act ("FAA").  9 U.S.C. § 2.  There is generally a "liberal federal policy favoring arbitration agreements." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 504 (2018).  The FAA confers on the parties involved the right to obtain an order directing that arbitration proceed in the manner provided for in a contract between them.  9 U.S.C. § 4.  In considering a motion to compel arbitration, the "court's role under the [FAA] . . . is limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).  The party seeking to compel arbitration bears the burden of proving by a preponderance of the evidence the existence of an agreement to arbitrate. *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015); *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014) (citing *Rosenthal v. Great W. Fin. Sec. Corp.*, 14 Cal. 4th 394, 413 (1996)).  "When deciding a motion to compel arbitration, a district court must treat the facts as they would when ruling on a motion for summary judgment, construing all facts and reasonable inferences that can be drawn from those facts in a light most favorable to the non-moving party." *Turner v. Tesla, Inc.*, 686 F. Supp. 3d 917, 922 (N.D. Cal. 2023) (internal quotation marks and citation omitted); *see also Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021) ("The summary judgment standard is appropriate because the district court's order compelling arbitration is in effect a summary disposition of the issue of whether or not there had been a meeting of the minds on the agreement to arbitrate.") (internal quotation marks and citation omitted).

**ANALYSIS**

In its motion defendant argues that plaintiff's claims must be compelled to arbitration based on the California arbitration agreement plaintiff signed. (Doc. No. 3.) In his opposition, plaintiff argues that the North Carolina agreement is the operative arbitration agreement. (Doc. No. 16 at 5–6.) Plaintiff then argues that the North Carolina agreement is unenforceable because it is procedurally and substantively unconscionable. (*Id.* at 6–11.)

**A.    The Operative Arbitration Agreement**

As a preliminary matter, plaintiff contends that the North Carolina arbitration agreement supersedes the California arbitration agreement because the North Carolina arbitration agreement was signed later. (Doc. No. 16 at 5–6.) Defendant responds by arguing that the two agreements should be construed together because they were contemporaneously executed—signed mere minutes apart—and as a result the court should look to both agreements to glean the parties' intent. (Doc. No. 17 at 3–5.)

"In determining the validity of an agreement to arbitrate, federal courts should apply ordinary state-law principles that govern the formation of contracts." *Ferguson v. Countrywide Credit Indus., Inc.*, 298 F.3d 778, 782 (9th Cir. 2002) (citation omitted). "Before a federal court may apply state-law principles to determine the validity of an arbitration agreement, it must determine which state's laws to apply." *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 994 (9th Cir. 2010). The parties' North Carolina arbitration agreement purports to require that the agreement be governed by the FAA and "by the laws of the State of North Carolina." (Doc. No. 15-2 at 4.) However, in their briefs, both parties have relied on California law to support their arguments, and defendant expressly agreed that California law applies. (Doc. Nos. 3, 16, 17 at 8.) Therefore, the court will apply California law. *See Pinedo v. A Place for Mom*, No. 24-cv-03875-JCS, 2024 WL 4565090, at *7 (N.D. Cal. Oct. 24, 2024) ("In the parties' briefs, both sides relied on California law to support their arguments related to unconscionability and at the motion hearing, they expressly stipulated that California law applies to the question of whether the delegation provision is unconscionable. California law provides . . . .").

/////

3

Pursuant to California law, "[s]everal contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together." Cal. Civ. Code § 1642. Here, the California and North Carolina arbitration agreements are to be construed together because they were executed contemporaneously, mere minutes apart; between the same parties, plaintiff and defendant; as to a single primary transaction, plaintiff's hiring; and as to the same subject matter, how to resolve disputes between the parties. *See id.* As the California Court of Appeal has stated:

> Here, we have no difficulty concluding that the Arbitration Agreement and the Confidentiality Agreement should be read together. They were executed on the same day. They were both separate aspects of a single primary transaction—Alberto's hiring. They both governed, ultimately, the same issue—how to resolve disputes arising between Alberto and Cambrian arising from Alberto's employment. Failing to read them together artificially segments the parties' contractual relationship. Treating them separately fails to account for the overall dispute resolution process the parties agreed upon.

*Alberto v. Cambrian Homecare*, 91 Cal. App. 5th 482, 490–91 (2023); *see also Capili v. Finish Line, Inc.*, 116 F. Supp. 3d 1000, 1004 n.1 (N.D. Cal. 2015) ("Even assuming these agreements are somehow different, Finish Line has provided the Court no legal authority and no argument suggesting that the August 13th [arbitration] agreement provides an independent obligation to arbitrate given that the same subject matter is covered by the August 26th Arbitration Agreement."), *aff'd,* 699 F. App'x 620 (9th Cir. 2017).

Still, the court must determine how to resolve inconsistencies between the two arbitration agreements. *See Lopez v. Thyssenkrupp Supply Chain Servs., Na Inc.*, No. 23-cv-03368-VC, 2024 WL 3211492, at *1 n.1 (N.D. Cal. June 28, 2024) ("[Thyssenkrupp Supply] presented two arbitration agreements that might govern this dispute. A court must decide which one applies."). "Under California law, the general rule is that when parties enter into a second contract dealing with the same subject matter as their first contract without stating whether the second contract operates to discharge or substitute for the first contract, the two contracts must be interpreted together and the latter contract prevails to the extent they are inconsistent." *Suski v. Coinbase, Inc.*, 55 F.4th 1227, 1230 (9th Cir. 2022) (citations omitted) (cleaned up), *aff'd,* 602 U.S. 143

4

1  (2024). The latter contract supersedes the former even where the contracts were
2  contemporaneously executed. *See Suski*, 55 F.4th at 1230 (citing *Williams v. Atria Las Posas*, 24
3  Cal. App. 5th 1048, 1052 (2018)) (finding that the arbitration agreement signed "immediately
4  after" the parties' original agreement superseded the parties' original agreement, which did not
5  include an arbitration clause). Additionally, where two contracts are construed together and the
6  second contract supersedes the former in certain respects, the second contract can "render the
7  [apparently valid and enforceable] first contract unconscionable" such that neither contract may
8  be enforced. *Silva v. Cross Country Healthcare, Inc.*, 111 Cal. App. 5th 1311, 1316 (2025).
9       Following California law in this regard, the court will construe together the California and
10 North Carolina agreements, and, to the extent they are irreconcilable, the North Carolina
11 agreement's terms will be found to supersede the California agreement's terms, including for
12 purposes of evaluating unconscionability.

13 **B.  Unconscionability**

14      In determining whether a valid arbitration agreement exists, federal courts apply ordinary
15 state-law principles that govern the formation of contracts." *Heckman v. Live Nation Ent., Inc.*,
16 120 F.4th 670, 680 (9th Cir. 2024) (citations omitted). Under the FAA, a court may declare an
17 arbitration agreement unenforceable "upon such grounds as exist at law or in equity for the
18 revocation of any contract," 9 U.S.C. § 2, and may invalidate an arbitration agreement by
19 "generally applicable contract defenses, such as fraud, duress, or unconscionability," *AT&T*
20 *Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citation omitted). "[T]he party opposing
21 arbitration bears the burden of proving any defense, such as unconscionability." *Poublon v. C.H.*
22 *Robinson Co.*, 846 F.3d 1251, 1260 (9th Cir. 2017) (quoting *Pinnacle Museum Tower Ass'n v.*
23 *Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 236 (2012)).
24      "Under California law, a contractual provision is unenforceable if it is both procedurally
25 and substantively unconscionable. The more substantively oppressive the contract term, the less
26 evidence of procedural unconscionability is required to come to the conclusion that the term is
27 unenforceable, and vice versa." *Kilgore v. KeyBank, Nat. Ass'n*, 718 F.3d 1052, 1058 (9th Cir.
28 2013) (citation omitted) (cleaned up). Procedural unconscionability focuses "on 'oppression' or

'surprise' due to unequal bargaining power," while substantive unconscionability focuses on "'overly harsh' or 'one-sided' results." *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000) (citation omitted).

### 1. Procedural Unconscionability

Plaintiff argues that both the California and North Carolina agreements are contracts of adhesion and as such are procedurally unconscionable. In response, defendant contends that an arbitration agreement that is a condition of employment cannot be unconscionable if it satisfies the following five elements: (1) a neutral arbitrator; (2) adequate discovery; (3) a written reasoned opinion issued shortly after the decision; (4) identical types of relief as available in a judicial forum; and (5) appropriate cost-sharing. (Doc. No. 17 at 6) (citing *Armendariz*, 24 Cal. 4th at 102–04).

Defendant is incorrect in this regard. These five conditions identified by defendant are merely the "minimum requirements for the arbitration of unwaivable statutory claims." *Armendariz*, 24 Cal. 4th at 113. However, courts must also "consider objections to arbitration that apply more generally to any type of arbitration imposed on the employee by the employer as a condition of employment, regardless of the type of claim being arbitrated." *Id.* "These objections fall under the rubric of 'unconscionability.'" *Id.*

"Under current California law, it is unclear whether a contract of adhesion is inherently oppressive, and therefore automatically procedurally unconscionable, or whether oppression is a separate element that must be present." *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1281 (9th Cir. 2006). "However, both standards for procedural unconscionability are satisfied by a finding that the arbitration provision was presented on a take-it-or-leave-it basis and that it was oppressive due to an inequality of bargaining power that resulted in no real negotiation and an absence of meaningful choice." *Id.* (citation omitted) (cleaned up); *see also Peters v. Guaranteed Rate, Inc.*, No. 24-3679, 2025 WL 1904424, at *1 (9th Cir. July 10, 2025).[1]

/////

---

[1] Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36–3(b).

1    The court must "first determine whether the arbitration agreement is adhesive.
2  *Armendariz*, 24 Cal. 4th at 114. In this case, "[t]here is little dispute that it is. It was imposed on
3  employees as a condition of employment and there was no opportunity to negotiate." *Id.* at 114–
4  15. In addition, the California Supreme Court has recognized that "in the case of preemployment
5  arbitration contracts, the economic pressure exerted by employers on all but the most sought-after
6  employees may be particularly acute, for the arbitration agreement stands between the employee
7  and necessary employment, and few employees are in a position to refuse a job because of an
8  arbitration requirement." *Id.* at 115.
9    Therefore, the court finds that the arbitration agreements, construed together, are
10 procedurally unconscionable.
11   2.  <u>Substantive Unconscionability</u>
12   Plaintiff argues that the North Carolina arbitration agreement has numerous substantively
13 unconscionable provisions: it applies to any and all claims outside of employment; it is indefinite
14 in time; it protects numerous unidentified entities; and it requires the arbitrator to apply North
15 Carolina law. (Doc. No. 16 at 7–10.) Defendant responds by arguing that the first three points
16 are not relevant here, where the dispute arises out of plaintiff's employment and the current
17 motion to compel arbitration is not being brought by some non-signatory. (Doc. No. 17 at 8.) On
18 the fourth point asserted by plaintiff, defendant agrees that California (and not North Carolina)
19 law applies. (*Id.*)
20   Whether an arbitration agreement's terms are substantively unconscionable does not
21 depend on the nature of the plaintiff's claims. *Tyler v. Tailored Shared Servs., LLC*, No. 2:24-cv-
22 01374-KJM-DMC, 2024 WL 4894589, at *8 (E.D. Cal. Nov. 26, 2024) ("This is not to say
23 Tyler's case or claims are at the extreme fringes of this definition. But the breadth of these terms
24 is simply further confirmation that, in general and at the time of signing, the agreement's burdens
25 fell more heavily on employees than on the company."); *Ramirez v. Charter Commc'ns, Inc.*, 16
26 Cal. 5th 478, 505 (2024) ("[A]n unconscionability assessment focuses on circumstances known at
27 the time the agreement was made."); *see, e.g.*, *Cook v. Univ. of S. Cal.*, 102 Cal. App. 5th 312,
28 316, 321–22 (2024), *reh'g denied* (June 13, 2024) (finding that an arbitration agreement provision

requiring the plaintiff to arbitrate claims unrelated to her employment was substantively unconscionable even where the plaintiff's complaint alleged discrimination and harassment in the course of her employment); *Bahamonde v. Amazon.com Servs. LLC*, No. 25-cv-03499-JSC, 2025 WL 2021801, at *1, *8 (N.D. Cal. July 18, 2025) (same).  Further, the defendant cannot, on a *post hoc* basis, alter the arbitration agreement's terms to skirt a finding of substantive unconscionability.  *See Cook*, 102 Cal. App. 5th at 321–22 ("USC appears to concede the scope of the agreement—as written—is unconscionably broad and must be construed to mean other than what it plainly states to avoid unreasonable results.  Courts have rejected similar arguments.") (citations omitted); *Martinez v. Master Prot. Corp.*, 118 Cal. App. 4th 107, 116–17 (2004) (finding an arbitration provision requiring the parties to split the arbitration costs and to post fees in advance was unconscionable even though the employer stated that it was willing to modify the agreement and bear the cost of arbitration).  Even where the terms cannot be enforced as written due to statutory protections, unconscionability is evaluated based on the text of the arbitration agreement, not its practical effect.  *Samaniego v. Empire Today LLC*, 205 Cal. App. 4th 1138, 1147 (2012) (rejecting the argument that a unilateral fee-shifting provision did not render an arbitration agreement substantively unconscionable because the provision violated the Labor Code and could not actually be enforced against the employee as written).

Having dispensed with defendant's arguments to the contrary, the court turns to verifying that the agreement terms that plaintiff identifies are, as plaintiff claims, substantively unconscionable.

      a.    *The Arbitration Agreement Applies to Any and All Claims Outside of Employment*

Plaintiff first argues that the North Carolina agreement contains a substantively unconscionable term, which requires the employee to arbitrate any and all claims "whether or not they are in any way related to or associated with [their] employment or the termination of [their] employment." (Doc. No. 16 at 8.)  Meanwhile, the California agreement limits arbitration to claims that "are in any way related to or associated with [the signatory's] employment or the termination of [their] employment." (Doc. No. 15-2 at 7.)  Because these terms are directly

8

contradictory, the later-signed contract, the North Carolina agreement, supersedes the earlier-signed contract, the California agreement. *Suski*, 55 F.4th at 1230. Therefore, the operative term requires arbitration of any and all claims whether or not related to plaintiff's employment.

Furthermore, the court finds plaintiff's argument that the broad scope of the North Carolina agreement is substantively unconscionable to be persuasive. *Cook*, 102 Cal. App. 5th at 321–25 (finding that the broad scope of the arbitration agreement was substantively unconscionable where the "plain language of the agreement require[d] [the plaintiff] to arbitrate claims that [were] unrelated to her employment with [the defendant]"); *Bahamonde*, 2025 WL 2021801, at *8 (same).

     b. *The Arbitration Agreement is Indefinite in Time*

Plaintiff also argues that the North Carolina agreement is substantively unconscionable because it is indefinite in time. (Doc. No. 16 at 8–9.) Both the North Carolina and California agreements state that the covered claims include "all past, present, future claims" "during or following [the employee's] employment." (Doc. No. 15-2 at 2, 7.) Further, both agreements state that the terms of the agreement "control over any prior or subsequent oral discussions." (*Id.* at 4, 10.)

The court finds that in designating that the agreement will be effective for an indefinite duration, the terms of the arbitration agreements are substantively unconscionable. *Bahamonde*, 2025 WL 2021801, at *8 (finding that the arbitration agreement applied "indefinitely" such that it was "overbroad in duration" where the agreement expressly provided that it "shall survive the termination of Employee's employment"); *Sandler v. Modernizing Med., Inc.*, No. 24-cv-00812-AJB-BJC, 2024 WL 4469217, at *8 (S.D. Cal. Oct. 9, 2024) (finding that the arbitration agreement was "one of indefinite duration, and thus substantively unconscionable" where the agreement limited modification or waiver of any rights under the agreement to "a writing signed by the President or CEO of Company and [the employee]" and stated that "the rights and obligations of the parties to this Agreement will survive termination of [their] employment with the Company"); *Cook*, 102 Cal. App. 5th at 325–26 (finding that "the trial court did not err in holding that the duration of the arbitration agreement was substantively unconscionable" where

9

the agreement expressly stated that it "shall survive the termination of Employee's employment, and may only be revoked or modified in a written document that expressly refers to the 'Agreement to Arbitrate Claims' and is signed by the President of the University").

          c.      *The Arbitration Agreement Protects Numerous Unidentified Entities*

Plaintiff next argues that the North Carolina arbitration agreement requires him to arbitrate claims against an incalculable number of unidentified individuals and entities tangentially related to defendant. (Doc. No. 16 at 9.)[2] Such broad protections for defendant are, according to plaintiff, one-sided and substantively unconscionable. (Doc. No. 16 at 9.)

The court agrees with plaintiff in this regard. As the California Court of Appeals has explained, "[w]here the agreement requires arbitration of claims against certain classes of third parties, nonsignatories can make 'a prima facie showing sufficient to allow them to enforce the arbitration clause as third party beneficiaries' simply by showing they fall within one of the classes of beneficiaries identified by the contract." *Cook*, 102 Cal. App. 5th at 328 (citation omitted). "Conversely, for [the employee] to enforce the arbitration agreement against [the company's] agents or employees as third-party beneficiaries, [the employee] would have to show [that the nonsignatory] actually accepted a benefit under the agreement." *Id.* "While it is theoretically possible for [the employee] to make this showing, it is unlikely." *Id.* "The plain language of the arbitration agreement thus provides a significant benefit to [the company's] related entities without any reciprocal benefit to [the employee]." *Id.* With "no justification for this one-sided treatment," the arbitration agreement is "substantively unconscionable for lack of mutuality in the claims that are subject to arbitration." *Id.*; *see also Bahamonde*, 2025 WL 2021801, at *8 (finding that the arbitration agreement was substantively unconscionable where the agreement defined covered parties to include broad swaths of third-party beneficiaries and arbitrable claims were "not limited to Plaintiff's employment").

Here, the parties' arbitration agreements, construed together, are both procedurally and, in at least three respects, substantively unconscionable. Accordingly, the court will turn to address

---

[2] Indeed, the court notes that both the California and North Carolina agreements do so. (Doc. No. 15-2 at 2, 7.)

10

whether the unconscionable terms may be severed so as to allow enforcement of the remaining terms of the contracts. *See Silva*, 111 Cal. App. 5th at 1316 (finding that where two contracts are construed together and the second contract supersedes the former in certain respects, the second contract can "render the [apparently valid and enforceable] first contract unconscionable" such that neither contract may be enforced).

3. <u>Severability</u>

The California Court of Appeal has already examined the severability of substantively unconscionable terms nearly identical to the ones at issue here and discussed above. That court reasoned as follows.

> "An unconscionable contractual term may be severed and the resulting agreement enforced, unless the agreement is permeated by an unlawful purpose, or severance would require a court to augment the agreement with additional terms. [Citation.]" (*Penilla v. Westmont Corp.* (2016) 3 Cal. App. 5th 205, 223, 207 Cal. Rptr. 3d 473.) Severance may be properly denied when the agreement contains more than one unconscionable provision, and " 'there is no single provision a court can strike or restrict in order to remove the unconscionable taint from the agreement.' [Citation.]" (*Baxter v. Genworth North America Corp.* (2017) 16 Cal. App. 5th 713, 738, 224 Cal. Rptr. 3d 556.) "We review a trial court's order declining to sever the unconscionable provisions from an arbitration agreement for abuse of discretion." (*Lange v. Monster Energy Co.* (2020) 46 Cal. App. 5th 436, 453, 260 Cal. Rptr. 3d 35, citing *Armendariz*, *supra*, 24 Cal.4th at p. 124, 99 Cal. Rptr. 2d 745, 6 P.3d 669.) " 'A ruling amounts to an abuse of discretion when it exceeds the bounds of reason, and the burden is on the party complaining to establish that discretion was abused.' " (*Workman v. Colichman* (2019) 33 Cal. App. 5th 1039, 1056, 245 Cal. Rptr. 3d 636.)
>
> As discussed above, three aspects of the agreement are unconscionable. USC argues the trial court abused its discretion in refusing to sever the unconscionable provisions and enforce the remainder of the arbitration agreement. It contends the trial court abused its discretion in finding the number of unconscionable terms to be dispositive on the issue of severance. It argues the trial court erred in not considering whether the central purpose of the agreement could be preserved through severance. We find these arguments unpersuasive.
>
> As an initial matter, we disagree with USC's characterization of the agreement's purpose. It claims "the central purpose of the Arbitration Agreement is to have nearly all employment related disputes resolved through arbitration." This characterization is expressly belied by the plain language of the agreement itself. The agreement's purpose is not directed only at disputes related to Cook's

> employment but instead requires Cook to arbitrate claims that do not relate to her employment or her employer.
>
> We also disagree with USC's characterization of the trial court's ruling. The court did not simply end its severability analysis at finding there were multiple unconscionable provisions in the agreement. Rather, the court expressly considered the central purpose of the agreement in determining it was permeated with unconscionability, stating "as it stands, the arbitration agreement is tainted with unconscionability because its central purpose appears to be the ability for the parties to arbitrate all possible disputes between each other, for an indefinite period of time, with USC able to move for arbitration of claims against it and its related entities, but Plaintiff only able to move for arbitration of claims by USC against her." There is no question that the trial court explicitly considered the central purpose of the agreement in ruling on severability.
>
> The trial court also determined that curing the unconscionable provisions would require substantive rewriting of the arbitration agreement to contradict its plain language, and that severance would provide a windfall to USC. We find the trial court could have reasonably concluded that "[s]uch multiple defects indicate a systematic effort to impose arbitration on an employee not simply as an alternative to litigation, but as an inferior forum that works to the employer's advantage." (*Armendariz, supra*, 24 Cal.4th 83 at p. 124, 99 Cal. Rptr. 2d 745, 6 P.3d 669.) The trial court's finding that unconscionability permeated the arbitration agreement as a whole, and its refusal to sever the unconscionable provisions, was a reasonable exercise of its discretion. The trial court was not required to sever the offending provisions and enforce the remainder of the arbitration agreement.

*Cook*, 102 Cal. App. 5th at 328–30.

The court is persuaded by the analysis of the court in *Cook* and finds that the unconscionable provisions of the arbitration agreements before it are not severable.[3] The parties' agreements to arbitrate are therefore unenforceable. *See Silva*, 111 Cal. App. 5th at 1316.

**CONCLUSION**

For the reasons discussed above,

1. Defendant's motion to compel arbitration (Doc. No. 3) is DENIED; and

/////

/////

---

[3] Because the court finds the arbitration agreements to be unconscionable and non-severable based on the three provisions discussed above, the court need not analyze plaintiff's fourth argument regarding substantive unconscionability, i.e. that the arbitration agreement requires the arbitrator to apply North Carolina law. (Doc. No. 16 at 10.)

12

2. The court hereby RESETS the Initial Scheduling Conference in this matter for October 27, 2025 at 1:30 p.m. before District Judge Dale A. Drozd by Zoom.

IT IS SO ORDERED.

Dated: **August 18, 2025**

DALE A. DROZD
UNITED STATES DISTRICT JUDGE

13